**UNITED STATES of America,**

v.

**Robert M. McCOY.**

**No. 79–133–Cr–J–M.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 20, 1980.

542

Gary L. Betz, U. S. Atty., by Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for Government.

Albert J. Datz, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

MELTON, District Judge.

This cause is before the Court on the following pretrial motions: (1) motion to suppress evidence secured from the Withers Moving & Storage Company (hereinafter referred to as Withers) pursuant to a grand jury subpoena duces tecum, and a supplemental motion to suppress evidence turned over to customs agents at the defendant's business premises on or about July 15, 1975; (2) motion for a bill of particulars; (3) motion to strike; (4) motion for return of property; and (5) motion to dismiss. This order resolves all pending pretrial motions.

## MOTION TO SUPPRESS

The defendant in a motion filed November 29, 1979, moved to suppress "all physical evidence obtained by the government from Withers Moving and Storage Company, its predecessors and successors." In a supplemental motion to suppress filed December 18, 1979, the defendant further requests that documents provided to customs agents on April 15, 1975, during their inspection of business records at the office of the defendant's customshouse brokerage firm be suppressed. An evidentiary hearing was held on December 18, 1979. An interim memorandum in support of the defendant's motion accompanied his original filing. A more detailed memorandum in support of the motion to suppress was received on January 2, 1980.

The Court will first consider the defendant's claim that the documents stored at Withers were unconstitutionally seized in violation of the Fourth Amendment of the United States Constitution. McCoy argues that the grand jury subpoena duces tecum utilized by the government to obtain access to the defendant's business records constituted an unlawful search and seizure. Additionally, the defendant asserts that the subpoena duces tecum, was overly broad, in that it failed to describe with particularity the documents sought.

The Withers' subpoena to which the defendant objects, reads in pertinent part:

You are hereby commanded to appear in the United States District Court . . to testify before the Grand Jury and bring with you all books, papers, documents, and records relating to and/or stored by Robert M. McCoy, Customshouse Broker—Foreign Freight Forwarder.

The subpoena further provided the authorized representative of Withers the option to either produce the requested documents at a pre-set time, or to "freely and voluntarily consent to the production of the subpoenaed items to the agent(s) serving this subpoena." Withers elected to permit the customs agents serving the subpoena immediate access to and possession of the stored materials.

Through this subpoena, the government sought the business records of the defendant. These materials the government had reason to believe, had been moved directly from the defendant's former office to storage. Prior to moving the materials, the government was able to ascertain from the labeled files that the records sought were indeed those in the possession of Withers.

With minor exceptions, the detailed list of the documents secured (Government Exhibit 7) reveals that the government's assumption that the subpoenaed materials would be "required records" was correct.

In *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Supreme Court considered the merits of a motion which sought to suppress checks and other bank records secured directly from the defendant's banks pursuant to a grand jury subpoena duces tecum. In that case, the Court found the defendant possessed no Fourth Amendment interest in the records. The reasoning of the Court is particularly instructive in the circumstances herein presented. The Supreme Court held:

> "[N]o interest legitimately protected by the Fourth Amendment" is implicated by governmental investigative activities unless there is an intrusion into the zone of privacy, into "the security a man relies upon when he places himself or his property within a constitutionally protected area."

425 U.S. 435, 440, 96 S.Ct. 1619, 1622 (1976), *quoting Hoffa v. United States*, 385 U.S. 293, 301–302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966).

The defendant argues that he had a reasonable expectation of privacy in the documents placed in storage with Withers. It is clear that the documents in question were delivered to Withers for preservation and safekeeping upon the vacation of the defendant's business premises. The defendant could reasonably expect that Withers would not permit public access to the stored materials. This is not to say, however, that once materials are placed in the custody of a storage company, that the Fourth Amendment prohibits the compulsory production of the documents pursuant to a grand jury subpoena. This is especially true where, as in the case *sub judice*, there can be no

reasonable expectation of privacy in documents required by administrative regulation to be available for inspection. *In Re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir. 1979).

■ It is well settled that in order to determine whether there is a legitimate expectation of privacy, a court must examine the nature of the particular documents sought to be protected. *United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976); *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Other cases have recognized that a legitimate Fourth Amendment claim depends not upon a property right but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 141, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ The duties and responsibilities of customshouse brokers are set forth in Title 19, Code of Federal Regulations, Part 111. These responsibilities include a requirement that each broker "keep and maintain on file a copy of each entry made by him with all supporting papers, . . ., and copies of all his correspondence and other papers relating to his customs business." 19 C.F.R. § 111.21 (1978). Other records which must be maintained are described in 19 C.F.R. § 111.22 (1978). Furthermore, customs records must be available for inspection, copying, reproduction or other official use. 19 C.F.R. §§ 111.25 and 111.27 (1978). The Court is of the opinion that almost all of the books and papers secured through the use of the grand jury subpoena on Withers are records required by the aforementioned administrative regulations to be retained and available for inspection.[1]

1. The government indicated at the hearing on the motion to suppress and reiterated in its memorandum on this subject that it will not attempt to introduce the following records itemized in Exhibit 7: (1) Item B–25, page 6 (foreign freight forwarder); (2) Item B–45, page 10 (paid bills); (3) Item B–75, page 33, first two lines, last paragraph only (records of Herbert B. Mohler); and (4) Item B–92, page 50 (bills, etc., from University Club). The government also indicated that it will not use records prepared prior to 1971. The motion to suppress is therefore moot as to these records. Similarly, the Court need not at this time consider whether all of the defendant's records that the United States may wish to admit at trial are admissible.

When the defendant procured his license to act as a customshouse broker, and during his continued performance of brokerage duties, he was aware of the responsibility incumbent upon a licensed broker to provide Customs with access to his business records. Indeed, the regulations could not be clearer on this subject. The regulations provide:

> A broker shall not refuse access to, conceal, remove, or destroy the whole or any part of any book or paper relating to his transactions as a broker which is being sought, or which the broker has reasonable grounds to believe may be sought, by the Treasury Department or any representative thereof, nor shall he otherwise interfere, or attempt to interfere, with any proper and lawful efforts to procure or reproduce information contained in such book or paper.

19 C.F.R. § 111.26 (1978).

Clearly, the same books and papers which the defendant seeks to suppress, if presently in his possession, would have to be released to the proper authorities. The defendant cannot claim a legitimate expectation of privacy in these documents. *See In Re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir. 1979). The Court believes the circumstances herein presented do not provide cause for applying the exclusionary rule and keeping relevant and reliable evidence from the trier of fact. *See Rakas v. Illinois*, 439 U.S. 128, 137, 99 S.Ct. 421, 427, 58 L.Ed.2d 387 (1978).

The decision *In Re: Search Warrant (Church of Scientology)*, 25 Cr.L. 2525 (Aug. 24, 1979) upon which the defendant relies is inapposite. The "general" search which concerned the District of Columbia District Court examined documents of a private nature, documents protected from unauthorized disclosure; whereas, the customs records seized herein were "required records", which the government had statutory authority to inspect and remove.

■ Having decided that the Withers subpoena is not violative of any Fourth Amendment right of the defendant, the Court must also consider whether the documents released pursuant to that subpoena infringe upon any Fifth Amendment rights of the defendant. The Fifth Circuit opinion, *In Re Grand Jury Proceedings*, considered the applicability of the Fifth Amendment's privilege against self-incrimination to "required records" holding:

> The proper designation by the government of certain records to be kept by an individual necessarily implies an obligation to produce them, and limited implied testimonial authentication. These obligations to keep and produce the records are in a sense consented to as a condition of being able to carry on the regulated activity involved. In this respect, the mere response by production is no more a violation of the privilege against self-incrimination than requiring the creation of the record itself, for it is the record, presumably, that might incriminate.

601 F.2d 162, 171 (5th Cir. 1979) (footnote omitted). Under this rule, it is clear that the admission of documents secured through the use of the subpoena duces tecum on Withers and found to be "required records", does not infringe upon any Fifth Amendment right of the defendant.

With respect to McCoy's business records copied by customs agents on April 15, 1975, during their inspection of documents related to the defendant's customs business, the Court can detect no violation of any right of the defendant. The law permits customs agents access to, and the privilege of copying required records. *See United States v. Cooper*, 409 F.Supp. 364 (M.D.Fla.) *aff'd*, 542 F.2d 1171 (5th Cir. 1976); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); 19 C.F.R. § 111.25 (1978).

## MOTION FOR BILL OF PARTICULARS

■ The government in its verified response to the defendant's motion for bill of

particulars, has sought to foreclose the need for a bill of particulars by generally apprising the defendant of the evidence upon which the government intends to rely at trial. The defendant has good cause to be unsatisfied with the government's response. The purpose of a bill of particulars is not merely to apprise the defendant of the voluminous materials and numerous witnesses used in the preparation of the government's case. The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment. *See United States v. Caine*, 270 F.Supp. 801, 806 (S.D.N.Y.1967).

## MOTION TO STRIKE

■ The defendant requests that the Court strike the allegations found in paragraphs 9(a)–9(f) of Count 1, and as incorporated in each successive count of the indictment. Although the defendant filed a document entitled Memorandum on Motions to Dismiss, to Strike and for Bill of Particulars, that document only briefly addresses the legal basis for defendant's motion to strike. As the government indicated it had done in its memorandum in opposition, the Court can only assume the basis for defendant's motion, the fact that the allegations subject to the motion to strike describe acts occurring beyond the statute of limitations period. The use in a mail fraud indictment of transactions and events occurring beyond the statute of limitations period, but directly related to the charged offenses, is permitted. *United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975).

## MOTION FOR RETURN OF PROPERTY

■ The defendant seeks the return of all books, papers and other documents obtained by the government which belonged to the defendant. Through the government's memorandum in opposition to the defendant's motion, and by affidavit of Customs Agent William F. Burta, the government informed the Court that the defendant has been provided sufficient opportunity to review and copy any of the documents which the defendant desires returned. The motion for return of property is therefore denied.

## MOTION TO DISMISS

■■ The essential elements of a mail fraud prosecution are (1) a scheme or artifice to defraud, and (2) the use of the mails to execute this scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). The defendant alleges in his motion to dismiss that the indictment is vague and fails to state facts sufficient to constitute an offense against the United States. The defendant's reliance on the decisions in *United States v. Varner*, 437 F.2d 1195 (5th Cir. 1971) and *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974) is misplaced. The indictment in this case, unlike the above-cited cases, contains specific averments of the nature of the false and fraudulent pretenses and representations used by the defendant in the alleged scheme and artifice to defraud.

■ The defendant also contends that allegations contained in paragraphs 3, 4, 5, 6, and 9, of Count One, and which are incorporated by reference into each of the other counts are irrelevant, improper and scandalous. The Court has carefully reviewed the allegations contained in the aforementioned paragraphs and finds each to be appropriately charged in the indictment since they constitute part of and were in furtherance of the alleged scheme to defraud. It is clear that "fraudulent representations" as used in 18 U.S.C. § 1341 (1976) may be effected by deceitful statements of half-truths or the concealment of material facts. *See Williams v. United States*, 10th Cir., 368 F.2d 972, *cert. denied*, 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345 (1966).

The defendant further moves that the indictment be dismissed on the basis that the allegations in paragraph 8 of Count One and as that paragraph is incorporated in each of forty-four other counts are insufficient to allege use of the mails by "lulling", and that each count fails to adequately describe the matter which the defendant

allegedly mailed. These assertions are clearly without merit.

For the reasons set forth above, it is therefore

ADJUDGED:

1. That the defendant's motion and supplemental motion to suppress are denied;

2. That the defendant's motion for a bill of particulars is granted. The government shall furnish the defendant within ten (10) days all requested particulars which have not, as of the date of this order, been provided;

3. That the defendant's motion to strike is denied;

4. That the defendant's motion for return of property is denied; and

5. That the defendant's motion to dismiss is denied.