**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Alan LONG, Defendant-Appellant.**

**No. 82–1746.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 5, 1983.

Decided Sept. 14, 1983.

---

* Honorable Sherman A. Christensen, Senior Judge, United States District Court for the District of Utah, sitting by designation.

J. William Beard, Jr., San Diego, Cal., for defendant-appellant.

Robert F. Semmer, and Maria T. Arroyo-Tabin, Asst. U.S. Attys., argued, Peter K. Nunez, U.S. Atty., Robert F. Semmer, and Maria T. Arroyo-Tabin, Asst. U.S. Attys., on the brief, San Diego, Cal., for plaintiff-appellee.

Before ALARCON and NORRIS, Circuit Judges, and PRICE,* District Judge.

PRICE, District Judge:

Appellant was convicted following a jury trial for violation of one count of possession of a firearm by a convicted felon [18 U.S.C. App. § 1202(a)(1)]. Judgment was entered upon such conviction, and defendant appealed. Three issues are presented for this court's consideration:

(1) Did the trial court err in failing to review some fifteen hundred (1500) pages of documents containing witness statements which the government conceded was potentially Jencks material?

(2) Did the trial court err in failing to provide defense counsel with a complete copy of the affidavit used in support of the search warrant obtained to search the defendant's residence, as well as copies of the wiretap intercepts?

(3) Did the trial court err in failing to grant defendant's motion for a mistrial based upon alleged prejudicial statements made by government witnesses?

I

Jencks Act Materials

Promptly upon the case being transferred to the district judge who ultimately tried the case, defendant's counsel notified the trial judge that he would be requesting certain Jencks material that he had previously attempted to obtain through discovery motions. The court observed that the Jencks Act did not require that statements pertaining to other investigations and not pertaining to the instant case be made available. Approximately six days prior to trial, as a precautionary measure, the U.S. Attorney's Office addressed a letter to the trial judge with a copy to defendant's counsel, which stated in pertinent part as follows:

At the last appearance in court on the above-captioned matter, defense counsel raised the issue of whether he had been provided with all 3500 material pertaining to government witness John Cartwright. We represented to the court that all interview reports and grand jury material relevant to the subject matter of Mr. Cartwright's testimony in this case had been tendered to counsel.

In order to insure that the record is accurate and complete on this matter, we are enclosing a list of interview reports made by FBI agents which list also indicates which reports and grand jury testimony, or parts thereof, have been tendered. For the convenience of the court, those portions of the reports or testimony which have been tendered are marked. Enclosed with this list is a copy of all reports and grand jury testimony of which a review can be made to substantiate the government's prior representations to the court and counsel.

After the witness Cartwright testified, the following colloquy occurred between court and counsel:

MR. BEARD: The only other thing is, just for the record, I've made my Jencks Act request, they say they've complied. I understand there's a bunch of documents under seal that I haven't seen, so—you know.

* Honorable Edward Dean Price, United States District Judge, for the Eastern District of California, sitting by designation.

THE COURT: There are.

MR. BEARD: Well, okay. I'm just saying they're going to have to stay there obviously for valid purposes.

THE COURT: Yeah. And I've not read them either. 1500 pages, mainly pertaining to another investigation, I'm not poring through.

MR. BEARD: Well, I don't know that they do. I'm making my request.

THE COURT: Okay.

It is apparent from the record that the trial judge was relying on information other than that gleaned by personal inspection of the documents submitted *in camera* for the factual determination that they pertained to other investigations, and were not material to the instant trial.

18 U.S.C. § 3500(c) provides as follows:

If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

*Palermo v. United States,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), is the first case wherein the United States Supreme Court considered the application of 18 U.S.C. § 3500. In the course of the examination of the legislative history and purpose of that section, Justice Frankfurter, speaking for a unanimous court, observed:

It is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement. In most cases the answer will be plain from the statement itself. In others further information might be deemed relevant to assist the court's determination. This is a problem of the sound and fair administration of a criminal prosecution and need, reflected in so much of our law of evidence, to avoid needless trial of collateral and confusing issues while assuring the utmost fairness to a criminal defendant. *See, e.g., Nardone v. United States,* 308 U.S. 338, 342, 84 L.Ed. 307, 312, 60 S.Ct. 266 [268].

*Palermo v. United States, supra,* 360 U.S. at 354–355, 79 S.Ct. at 1225–1226.

*Campbell v. United States,* 365 U.S. 85, 95, 81 S.Ct. 421, 426, 5 L.Ed.2d 428, described the trial judge's function under 18 U.S.C. § 3500, with more specificity:

The statute says nothing of burdens of producing evidence. Rather it implies the duty in the trial judge affirmatively to administer the statute in such a way as can best secure relevant and available evidence necessary to decide between the directly opposed interests protected by the statute—safeguarding government papers from disclosure, and the interest of the accused in having the government produce "statements" which the statute requires to be produced.

Although not concerned with the precise issue we now face, the Ninth Circuit followed the teaching of *Campbell* in *Ogden v. United States,* 303 F.2d 724 (9th Cir.1962).

Recently the Ninth Circuit approved the procedure mandated in *Palermo.* *See United States v. Jones,* 612 F.2d 453 (9th Cir. 1979). Other circuits considering the matter are in accord: *See United States v. Tomaiolo,* 280 F.2d 411 (2nd Cir.1960); *Saunders v. United States,* 316 F.2d 346 (D.C.Cir.1963); *Hilliard v. United States,* 317 F.2d 150 (D.C.Cir.1963); *United States v. Keig,* 320 F.2d 634 (7th Cir.1963); *United States v. Chitwood,* 457 F.2d 676 (6th Cir. 1972); *United States v. Cleveland,* 477 F.2d 310 (7th Cir.1973). Significantly, however, a trial judge's failure to review *in camera* does not necessarily require a dismissal. As indicated in *Ogden, supra,* a case merely need be remanded with direction to the trial judge to conduct a belated *in camera* review.

## II

### The Search Warrant

█ As a part of the prosecution's case, the government was engaged in an extensive investigation, only a part of which focused on the defendant. In the course of this investigation, a general affidavit for a search warrant was prepared, only parts of which concerned the search of the defendant's residence. In addition, the government conducted a wire tap upon the defendant's telephone. The judge who heard the defendant's discovery motions did not make a written order. However, at the conclusion of the discovery motion hearing, the district court judge stated:

> What the court has done is reviewed the affidavit and search warrant to determine if there is any material there that would aid and assist you in preparing for a suppression motion, or if there is any relevant material. In light of the *in-camera* hearing the court will make the finding it is not; therefore, you are not entitled to have the balance of the material.

For the record, I will ask the clerk to mark this as court's exhibit number one and place it in the file and it can be subject to your review if you care to appeal.

Reporter's Transcript, Volume II, pp. 9:19–25, 10:1–3.

With regard to the Title III intercepts, the government represented to the court that counsel had been given "all of the transcripts relating to any conversation that Mr. Long had intercepted [sic]." The government also represented that it did not intend to use any of the conversations. Again the district judge hearing the motion ruled that the defendant had received everything to which he was entitled.

As stated in *United States v. Lee,* 589 F.2d 980 (9th Cir.1979): "Finally, '[t]he scope of discovery under Rule 16 is within the discretion of the trial judge and is not reviewable absent abuse.' *United States v. Evans,* 542 F.2d 805, 809 (10th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). *See also United States v. Fulton,* 549 F.2d 1325, 1328 (9th Cir. 1977)."

A full reading of the applicable portion of *Lee, supra,* indicates that a showing of prejudice to appellant's ability to defend himself is a primary method of demonstrating abuse. Clearly, appellant has demonstrated no prejudice resulting from the district court's rulings on his discovery motions.

## III

### Defendant's Motion for Mistrial

█ On two different occasions, two different government witnesses in response to non-provocative questions volunteered information that would connect the appellant, an admitted member of the Hell's Angels, with the unlawful possession of narcotics. At a side bar conference and out of the hearing of the jury, the court admonished the Assistant U.S. Attorney to carefully prepare the first witness so testifying to

guard against any further prejudicial statements. The court then admonished the jury to disregard the answer. The witness under examination at that time was a lay witness who was the government's informant. Later that afternoon while FBI Agent Schneider was on the witness stand he made a reference to "some things we suspected to be drugs." Again the trial court, in timely fashion, admonished the jury that the substances found were not drugs, and that drugs had nothing to do with the instant case.[1]

■ Considering the entire record in this matter, we cannot say that the two foregoing references to drugs so pervaded the trial that it was unfair. *See United States v. Nace,* 561 F.2d 763, 769 (9th Cir.1977).

The judgment will be vacated and the cause remanded to permit the trial court to conduct an *in camera* hearing to determine whether any of the 1500 pages of documents submitted to the trial court by the government should have been produced to the defendant under the provisions of 18 U.S.C. § 3500. A new trial will be required only if the court, after conducting such *in camera* inspection, concludes that a producible document or documents exist, and that the substantial rights of the defendant were affected by failure to make such documents available for defendant's use in the cross-examination of the witness Cartwright. Assuming that the trial court determines that a Jencks Act document does exist, the court may nevertheless conclude that the substantial rights of the defendant were not affected by its non-production. If a new trial is denied, the district court will enter a new and final judgment, thus preserving defendant's right to appellate review of the district court's action.

1. We note in passing that these two voluntary statements were offered by successive government witnesses. While we find no basis to believe that the Assistant U.S. Attorney was aware that these voluntary statements were going to be made, we would be remiss if we did not insert a cautionary warning that it is the obligation of prosecutors to take all steps necessary to avoid the insertion of such prejudi-

cial, nonrelevant testimony. Governmental law enforcement resources, beginning with the agents in the field and ending with the appellate courts, are so limited that it behooves all within the system to take every precaution against the inadvertent submission of prejudicial material that may require reversal of an otherwise "solid" conviction.