### UNITED STATES of America,

v.

### Howard BIDLOFF, Kevin Bregman, and Russell Bronson, Defendants.

### No. 97–CR–233A(F).

United States District Court, W.D. New York.

May 12, 1999.

Denise E. O'Donnell, United States Attorney, Martin J. Littlefield, Assistant United States Attorney, of counsel, Buffalo, NY, for United States.

LoTempio & Brown, Patrick J. Brown, of counsel, Buffalo, NY, for defendant Bidloff.

E. Carey Cantwell, Buffalo, NY, for defendant Bregman.

Angelo Musitano, Niagara Falls, NY, for defendant Bronson.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned for all pre-trial matters by Honorable Richard J. Arcara by order dated March 30, 1998. It is presently before the court on Defendants Bidloff, Bregman and Bronson's motions for discovery, and a Bill of Particulars filed, respectively, January 8, 1999 (Doc. Nos.97, 96) (Bidloff and Bregman) and January 11, 1999 (Doc. No. 98) (Bronson); and the Government's motion for reciprocal discovery, filed January 19, 1999 (Doc. No. 99).

### BACKGROUND and FACTS

These Defendants were charged, together with 21 co-Defendants, with conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 371 and §§ 1341, 1343. Specifically, Defendants are alleged to have engaged in the fraudulent sales of investments in germanium and indium,[1] metals used in various industrial applications.

The one count 154 page indictment alleges fraudulent sales of germanium and indium at inflated prices through a series of telemarketing companies using mail drops in the United States, Canada, the Bahamas, and Dutch Antilles during the period 1990 to 1993. Indictment, Introduction ¶¶ 1–5; 16. Defendant Bidloff is alleged to be an owner, with other co-Defendants, of two of the primary sales companies used in the scheme as well as a principal director of the scheme. *Id.,* ¶ 8. Defendant Bronson is alleged to have op-

erated another sales company used in the scheme. *Id.,* ¶ 14. Defendants Bronson and Bregman are alleged to have acted as "openers", *i.e.,* salesmen who make an initial sale to a customer on behalf of the telemarketing companies using false and fraudulent pretenses and misrepresentations. *Id.,* ¶¶ 12; 13. Among the falsehoods used by Defendants, as found by the Grand Jury, were representations that there was an active speculators market for the metals, the metals had a value much greater than in fact was case, prices for the metals were expected to enjoy imminent and significant increases because of technological advances and government stockpiling, the sales companies would buy back the customer's purchase at the customer's option, and that the salesman was not taking any commission on the initial sale. *Id.,* ¶ 16(A), (B), (C), (D), (E), (F). "Loaders" were experienced telemarketers who contacted a customer after the initial sale by an "opener" for the purpose of persuading the customer to increase his "investment" through additional misrepresentations and high-pressure sales tactics. *Id.,* ¶ 18. The false pretenses and misrepresentations were made from locations in Toronto, Ontario; Miami, Florida, Saba, Dutch Antilles; and Nassau, The Bahamas. Indictment, ¶ 31. The Indictment alleges that the scheme successfully defrauded numerous persons within the United States of more than $10 million. *Id.,* ¶ 32.

The Indictment also alleges 1,376 overt acts in furtherance of the scheme. As relevant, Overt Act # 3, Indictment at 15, states that Defendant Bidloff met with other co-conspirators during March, 1993 to discuss a partnership arrangement with one of the sales companies operated as part of the scheme. Overt Acts 588 – 618, Indictment at 63–65, detail the names of the persons to whom Defendant Bregman

1. Germanium, a greyish white brittle metaloid, resembles silicone and is used as a semiconductor. Merriam–Webster, Webster's Third New Int'l Dictionary 951 (1986). Indium is a silvery white, highly fusible and malleable metal used as a coating on other metallic surfaces such as airplane engine bearings. *Id.,* 1152.

made fraudulent sales, the dates of such sales, and the amounts of such sales along with references to a Document Control Number which in turns refers to a DCN ("Document Control Number") Discovery List. A copy of the DCN Discovery List ("List") was provided to each Defendant by the Government as part of the Government's voluntary pretrial discovery obligation. Exhibit A, Government's Response to Defendants' Omnibus Motions, filed January 19, 1999 (Doc. # 99) ("Government's Response"). Using a Bates stamp numbering system, the List describes the evidence available to the Government to establish each sale attributed to a particular Defendant. For example, in the case of Defendant Bregman, the DCN No. 402 associated with his name states that the evidence consists of a witness and card files of the "target" company. List at 15. The Indictment also alleges that Bregman was an opener for the Columbia Metals Group of Toronto, Indictment, ¶ 13, alleged to be one of the telemarketing companies involved in the scheme. Indictment, ¶ 1(b).

Overt Acts 619 – 685 detail fraudulent sales attributed to Defendant Bronson during the period July 21, 1992 through April 29, 1993 and relate each sale to evidence described under DCN No. 401. DCN No. 401 refers to card files of the "target" company. List at 15. The Indictment alleges that Bronson served as an opener for the Eurocan Metals Group of Toronto, one of the companies involved in the scheme. Indictment, ¶ ¶ 1(a); 12. The Government stated it has provided "open discovery of all the evidence." Defendants do not dispute this statement. Government's Response at 6. The DCN details similar information for each Defendant alleged to have participated in the scheme as an "opener" or as a "loader." Each Defendant joined in the Motion of the other Defendants to the extent the requested relief was applicable to his case.

Oral argument was conducted February 25, 1999. Based on the following, Defendants' motions are GRANTED, in part and DENIED, in part.

## DISCUSSION

1. *Defendants' Discovery Requests.*[2]

Defendant Bronson's motion includes 10 requests for discovery including statements of Defendant Bronson; any co-Defendant and unindicted co-conspirator; Defendant's criminal record; tangible evidence the Government intends to use at trial; items obtained from Defendant; tangible items material to the defense; test results, if any; and evidence of witness bias. Defendant Bronson's Motion, filed January 11, 1999 ("Bronson Motion") at 3–5.

 Fed.R.Crim.P. 16 provides for the discovery of a defendant's statements, prior criminal record, documents and tangible items material to the defense, results of tests and experiments, and disclosure of testifying experts. Discovery of statements is limited to those of the Defendant making the request, *United States v. Feola*, 651 F.Supp. 1068, 1141 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.1989), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989) and does not include co-conspirator statements, whether indicted or unindicted. *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974), *Feola, supra*, at 1142. The Government has stated that it possesses no recorded statements made by Defendant Bronson to any customer or any document containing the substance of any statement made by Defendant Bronson. Government's Response at 2. Further, the Government states it has provided such information pertaining to Defendant Bregman, and has otherwise provided all the information available to it as regards Defendant Bronson. *Id.* The Government also stated that all tangible evidence respon-

---

2. At oral argument, Defendant Bregman withdrew his discovery requests agreeing that,

based on the Government's responses, such requests were moot.

sive to the motion has been made available to Defendants through the DCN List and the 'open discovery' policy adopted in this case. *Id.* Specifically, at oral argument, the Government described the evidence available for inspection as including brochures, sales and financial data, index cards relating to customers, publications, and "scripts" used in the operation of the scheme. The Government also advised it would permit inspection of any samples of germanium and indium it may have in its possession. Additionally, the Government has represented that no evidence was seized from Defendant. Based on the foregoing, Defendants' motion for discovery of statements, tangible evidence and other information material to the defense are DENIED.

■ Defendants Bronson and Bidloff also request the Government provide disclosure of testifying experts in accordance with Fed.R.Crim.P. 16(a)(1)(E) which requires disclosure of the summary of any expert testimony it expects to offer as part of its case in chief pursuant to Fed.R.Evid. 702, 703, and 705. Defendant Bidloff's Motion filed January 8, 1999 (Doc. # 97) ("Bidloff Motion"), ¶ 27. The Government contends that as its witnesses, who are engaged in the business of selling germanium and indium, will testify as to prices of the metals during the relevant time period, such witnesses will not offer expert opinion and therefore are not testifying experts for the purposes of Fed.R.Evid. 702 and will not testify as experts but only "fact" witnesses based on their actual knowledge and experience. Government's Response, ¶ 2. However, Rule 702 is not so limited and is intended to cover so-called " 'skilled' witnesses, such as bankers or landowners testifying to land values." 1972 Advisory Committee Note to Rule 702. As the Government's witnesses are expected to testify to the values of the metals at issue based on their experience in the market for such metals, the fact that they may not specifically offer an opinion as to such fact is irrelevant to their status as experts for

purposes of Rule 702. Fed.R.Evid. 702 (witness may testify to specialized knowledge "in the form of an opinion *or otherwise.*") (emphasis added). Thus, the Government is required to comply with Fed.R.Crim.P. 16(a)(1)(E) as to these witnesses. Defendants' motion for disclosure pursuant to Fed.R.Crim.P. 16(a)(1)(E) is accordingly GRANTED. Such disclosure shall be provided not later *than 30 days prior to the commencement of trial.*

### 2. Defendants' Request for Exculpatory Material.

■ Defendants request the Government provide any exculpatory information of which it has knowledge. Although the government has a duty to disclose exculpatory information, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), such duty does not constitute a form of pretrial discovery subject to Rule 16. *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir.1991) (citing *United States v. Starusko,* 729 F.2d 256, 262 (3d Cir.1984)). Here, the record demonstrates the Government has complied fully with Defendants' discovery requests to the extent required under Rule 16. The Government has acknowledged its obligations to provide exculpatory information, however, the Government states it is aware of no such information at present. Government's Response, ¶¶ 12, 13. Accordingly, insofar as the Government has not responded, the motion is DENIED.

### 3. Defendant's Request for a Bill of Particulars.

Defendant Bronson seeks a Bill of Particulars including (a) the identities of known but unindicted co-conspirators; (b) the specific date the alleged scheme was devised; (c) whether Bronson was actually involved in devising the scheme as alleged and the date of his involvement; (d) identification of each false representation or pretense if not otherwise specified in the Indictment; (e) disclosure of any other overt acts in furtherance of the conspiracy not

specified in the Indictment; (f) the date, location, substance and the identity of each person alleged to have engaged in any overt act outside this district. Bronson Motion at 8 – 10. Defendant Bidloff seeks particulars regarding (a) the opening and ending dates of the conspiracy and when Bidloff joined the conspiracy; (b) identification of any other unindicted co-conspirators; (c) particulars as to the nature of the conspiracy and, if more than one conspiracy existed, the purpose of such and identification of any co-conspirators. Bidloff Motion at 3. The Government opposes the requests contending that the Indictment is sufficiently detailed and that Defendants have been provided with an index summarizing all of the Government's evidence in support of each overt act as it relates to each Defendant. Government's Response at 6.

The purpose of a Bill of Particulars is to allow preparation of a defense, avoid unfair surprise and prevent double jeopardy. *United States v. GAF Corporation*, 928 F.2d 1253, 1260 (2d Cir.1991); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988). It is not intended to permit disclosure the Government's evidence or theories of prosecution. *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir.1998). It is well-settled that the test is "whether the information sought is necessary, not whether it is useful." *United States v. Matos–Peralta*, 691 F.Supp. 780, 791 (S.D.N.Y.1988). Moreover, courts will not order particularization where the government has provided the information requested "in the indictment or some acceptable alternate form." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (*per curiam*).

Here; the Indictment describes in extensive detail the nature of the fraudulent scheme, how the telemarketing companies involved in the scheme sold the metals at inflated prices using the telephone and mails. Numerous overt acts are alleged against the co-conspirators, including Defendants Bidloff and Bronson.

While not providing exact details regarding all specific acts in which the evidence may show these Defendants engaged, neither is the Indictment a "bare bones" document so bereft of detail as to create a substantial risk of prejudicial surprise. *United States v. Barnes, supra*, at 666 (where defendant received "extensive additional information" absent a specific showing of prejudice the failure to particularize evidence of defendant's involvement in conspiracy which differed from indictment was not error).

In this case, the Indictment describes the various locations from which the fraudulent scheme was operated while alleging that certain overt acts may have taken place "elsewhere." Thus, there is no need to provide particularization of such allegation. Additionally, while alleging that the enumerated overt acts were among "other things," Indictment, ¶ 17, as the Indictment also alleges 1,376 separate overt acts, it is difficult to find that Defendants may be prejudiced if their request is not granted. Specifically, taken together with the substantial access to the Government's evidence provided to Defendants, Defendants fail to show that the "other things" allegation requires particularization as necessary to their defense. Notably, Defendants do not complain that the Government's voluminous evidence has not been accessible to them or that it is impracticable for them to intelligently review in preparation for trial. Compare *Bortnovsky, supra*, at 574 ("mountains" of information provided by Government left defendants "unguided" as to which documents Government intended to prove were false).

The same may be said for Defendants' request for identification of the "others" referred to in Count I is also without merit. Even if there are other unnamed co-conspirators, in light of the plethora of detailed information recounting the activities of the 21 other coconspirators, including five unindicted persons, in the Indictment and available to Defendants through discovery, the court fails to see how, in the

absence of the further particulars Defendants now request, the Defendants could conceivably be prejudiced. Nor is there any merit to Defendant Bidloff's request that he be informed of the dates he entered and left the conspiracy as the date of entry is fairly inferred from the Indictment. Particulars as to the date of his withdrawal from the conspiracy is not required as Defendant makes no assertion that he may claim withdrawal from the conspiracy to avoid vicarious liability or use of some co-conspirator hearsay evidence against him. If Defendant wishes to raise these issues at trial, he may do so by testimony or through cross-examination. If Defendant was a conspirator, he also knows if and when he withdrew.

Finally, Defendants' contend that they are entitled to particularization of each alleged false representation. However, the Indictment meets Defendants' request as it states eight representations used by the persons engaged in the scheme, including Defendants, to effect fraudulent sales to the numerous identified customers who lost money as a result. Indictment, ¶ 16(A)–(H). As discussed, a key misrepresentation was that the sales were made "by falsely and grossly over-representing the value of Germanium and Indium." Indictment, ¶ 16(B). Further, the Indictment describes with specificity that Defendants Bregman and Bronson acted as "openers", i.e., salesman who made initial contact with a prospective customer to sell the germanium and indium at the excessive prices relative to their respective actual market value. Indictment, ¶¶ 12, 13.

While Bronson contended at oral argument that without such details there would be no way for him to distinguish between what the Government alleges his representations may have been as compared to those the Government will seek to prove were made by a "loader," even if there be such differences Bronson fails to explain how such particulars are necessary to his defense could, in their absence, seriously prejudice his defense. Bronson has access to all the evidence available to the Government including whatever evidence of fraud it believes may be established based on the actions of co-conspirators who also acted as "loaders." Thus, particulars regarding the specific representations to be attributed to a specific "loader" are unnecessary to Bronson's defense. Morever, the request seeks evidentiary material which is beyond the purpose of a Bill of Particulars. Further, Bronson does not dispute that "scripts" of the sales pitches used by salesmen employed by the scheme are among the items of evidence available by the Government to Defendants for inspection. Exhibit A to Government's Response, DCN No. 424, at 17. In these circumstances, the requested particulars are not necessary to Bronson's defense.

Defendants' reliance upon *United States v. Caine*, 270 F.Supp. 801 (S.D.N.Y.1967) and *United States v. McCoy*, 492 F.Supp. 540 (M.D.Fla.1980), Bronson Motion at 10, for the proposition that further particulars of the precise misrepresentations should be provided, is misplaced. In *Caine, supra*, the court directed such particulars where the indictment, while adequately describing the alleged scheme to defraud, failed to allege the particular false representation made with respect to each of 60 counts of mail fraud. The *McCoy* case relies, without discussion, upon *Caine*. However, neither case is apposite as in the instant case the charge is solely that of conspiracy, not a substantive mail or wire fraud offense. There is no requirement that an indictment for conspiracy to commit mail or wire fraud specifically allege the precise nature of the false pretense or misrepresentation which would constitute the object offenses. *United States v. Wydermyer*, 51 F.3d 319, 326 (2d Cir.1995). Further, although the court in *Caine* granted further particulars as to the specific pretenses to which the indictment referred, the indictment in that case failed to provide any indication as to the substance of the falsehoods. *Caine, supra*, at 804. The Indictment here suffers from no simi-

lar oversight. Additionally, neither case establishes a general rule that particularization of specific false pretenses is required in every mail fraud prosecution. *Caine, supra,* at 803 (requiring particulars stating for each count of mail fraud indictment the alleged misrepresentation where indictment failed to describe misrepresentation in fraudulent newspaper advertisements). Thus, in this case, as the only offense charged is conspiracy, the Indictment describes in detail the nature and operation of the fraudulent scheme, and Defendants have been given extensive disclosure of the Government's evidence, no formal particulars of all of the misrepresentations used by the conspiracy are required. Defendants' motion for a Bill of Particulars is therefore DENIED.

### 4. *Request for Rule 404(b) and Rule 608–609 Material.*

Defendants request the Government provide any information it intends to offer pursuant to Fed.R.Evid. 404(b) (prior bad acts), 608–609 (character and conduct affecting credibility). Defendants further request the Government be directed to inspect the personnel files of government agents to locate any information relevant to the issue of credibility or bias relying on *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Kiszewski,* 877 F.2d 210 (2d Cir. 1989); and *United States v. Payne,* 63 F.3d 1200 (2d Cir.1995). However, the Government states it is unaware of any information relevant pursuant to Rules 404(b) and 608–609, and does not intend to call any Government agents as witnesses except as a summary witness. Government's Response, ¶¶ 9, 15. In the event such agents may be called, the Government agrees to conduct the review required by the caselaw and provide relevant information for an *in camera* review by the trial court. *Id.* Accordingly, the Defendants' motion is GRANTED in part and DENIED in part as moot. The Government shall provide any Rule 404(b) or Rule 608 material not later than **30 days prior to trial.**

### 5. *Request for Notice Pursuant to Fed. R.Crim.P. 12(d).*

Defendants request the Government provide formal notice of its intention, if any, to offer evidence which may be subject to a pretrial motion to suppress. The Government states there were no searches conducted in connection with the instant investigation by United States investigators. Government Response, ¶ 21. However, the Government also states evidence was turned over to it by Canadian authorities but that such evidence is not subject to the exclusionary rule citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 266, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) and *Stowe v. Devoy,* 588 F.2d 336, 341 (2d Cir.1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2862, 61 L.Ed.2d 299 (1979). Additionally, because the search warrants are in the custody of Canadian authorities, the Government is unable to respond to Defendants' request for copies of any inventories relating to the warrants. Accordingly, the motion is moot and as such is DENIED. Should Defendants wish to present the issue of admissibility of any evidence obtained through execution of Canadian warrants, a motion to suppress such evidence shall be filed *not later than 10 days following service of this order.*

### 6. *Requests for Evidence of Identification or Intercepted Conversations.*

Defendants move for disclosure of any evidence obtained as a result of pretrial identifications of Defendants or intercepted conversations. The Government states no such evidence was obtained in connection with the instant investigation. Government Response, ¶¶ 19, 23. The motion is therefore moot and as such is DENIED.

### 7. *Request for Pretrial Hearing on Admissibility of Co-conspirator Statements.*

Defendants request the court conduct a hearing to determine the admissibil-

ity of any statements the Government may seek to admit pursuant to Fed.R.Evid. 801(d)(2)(E). Defendants' rely on *United States v. James,* 590 F.2d 575 (5th Cir. 1979) and *United States v. Long,* 715 F.2d 1364 (9th Cir.1983). However, in this Circuit it is settled that the admissibility of co-conspirators' statements is determined by the trial court during the trial. *United States v. Tracy,* 12 F.3d 1186, 1195 (2d Cir.1993). Accordingly, the motion is DENIED. Counsel shall discuss with the trial judge the matter of how to make the prerequisite determination of admissibility of such evidence in accordance with the Rule 801.

8. *Request for Preservation of Rough Notes.* ·

Defendants request the court order the Government to direct its agents to preserve their rough notes in the event such may be needed to facilitate cross-examination. As the Government has no opposition to this request, Government's Response, ¶ 27, the motion is GRANTED.

9. *Request for Production of Jencks Act Statements.*

 Defendants move for pretrial disclosure of any statements subject to the *Jencks* Act, 18 U.S.C. § 3500. The court is without authority grant this request. *United States v. Scotti,* 47 F.3d 1237, 1249–50 (2d Cir.1995) (denying pretrial disclosure of *Jencks* materials and citing *United States v. Sebastian,* 497 F.2d 1267, 1269–70 (2d Cir.1974) (holding that court cannot compel government to turn over *Jencks* material at pretrial suppression hearing), and *United States v. Percevault, supra,* at 131 (holding that court cannot compel pretrial production of *Jencks* materials)). However, the Government agrees to provide such information at least 14 days prior to trial. Government's Response, ¶ 33. Based on the Government's representation, the motion is GRANTED. The Government shall provide such material as it has represented.

10. *Request for Notice of Evidence Admissible Pursuant to Fed.R.Evid. 807.*

Defendants request they be given notice of the Government's intention to offer evidence which may be subject to the residual exception to the hearsay rule. Fed. R.Evid. 807. The Government has stated its does not intend to rely on Rule 807. Government's Response, ¶ 29. The motion is therefore moot and as such it is DENIED.

**Government's Cross–Motion.**

The Government moves for reciprocal discovery pursuant to Fed.R.Crim.P. 16(b)(1)(A), (B). Defendants have not opposed the request. Accordingly, the motion is GRANTED. Defendants shall provide such discovery, if any, *not later than 60 days prior to trial.*

## CONCLUSION

Based on the foregoing, Defendants' motions are GRANTED in part and DENIED in part.

SO ORDERED.