**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**H. David MILLER,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**CONTINENTAL FUEL CO., INC.,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Don A. BLIESNER,**
**Defendant-Appellant.**

**Nos. 84–3051 to 84–3053.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1985.

Decided Sept. 16, 1985.

---

Margaret G. Halpern, Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

B. Lynn Winmill, Manning, Holmes & Winmill, Ohio, Pocatello, Idaho, Irwin H. Schwartz, Seattle, Wash., for defendant-appellant.

Before BROWNING and ALARCON, Circuit Judges, and THOMPSON,[*] District Judge.

ALARCON, Circuit Judge:

Appellants Continental Fuel Company (Continental), Don A. Bliesner (Bleisner) and H. David Miller (Miller) were convicted after a jury trial of conspiring to fix the retail price of gasoline in Bannock County, Idaho, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1 (1982)). Continental was fined $75,000; Bliesner and Miller were fined $25,000 and $35,000, respectively.

Appellants seek reversal on the following grounds:

*One.* The district court erred in denying Miller's motion to dismiss the indictment on the ground that section one of the Sherman Act is unconstitutionally vague as applied to price-fixing.

*Two.* The district court erred in denying appellants' motion to dismiss the indictment for insufficiency on the ground that it fails to allege an overt act and is factually insufficient.

*Three.* The district court erred in refusing to hold a hearing on appellants' challenge to the indictment on the ground that the grand jury was improperly constituted.

*Four.* The district court erred in refusing to conduct an *in camera* inspection of materials withheld by government counsel to determine whether they came within the Jencks Act.

*Five.* The district court erred in admitting the hearsay testimony of six witnesses in violation of the rules governing the admission of co-conspirators' statements.

*Six.* The district court erred in admitting computerized telephone records and excerpted subscriber information under the business records exception to the hearsay rule.

*Seven.* The district court erred in refusing to give appellants' proposed jury instructions regarding the intent element of a Sherman Act violation, the relationship of an independent pricing decision to a Sherman Act violation, and the import of proof of membership in overlapping multiple conspiracies where a single overarching conspiracy is charged in the indictment.

I

BACKGROUND

The indictment charged that between January 1978 and October 1982, four corporations and eight individuals [1] conspired and acted in concert with twelve other persons and business entities to fix gasoline prices in Bannock County (near Pocatello, Idaho). The principal organizers of the conspiracy were appellants Miller and Bleisner. David Miller worked for his father, Howard O. Miller, at the Howard O. Miller Co. (hereinafter HOMCO). HOMCO controlled four retail gasoline stations in

---

* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

1. Continental Fuel Company, Inc., Vern E. Herzog Oil Co., Triangle Oil, Inc., Roberts TBA Service, Inc., Howard O. Miller, James B. Leese (Sr.), H. David Miller, Don A. Bliesner, George W. Frost, Earl W. Pixton, James A. Leese (Jr.), and Edwin H. Roberts.

Pocatello. Bleisner and George Frost were co-owners of appellant Continental Fuel Co. Continental owned and operated three retail gasoline stations in Pocatello. Miller and Bliesner met daily at various bars and restaurants, where they would agree to implement area-wide price increases or to end price wars. Appellants admit that they regularly *discussed* prices and tried to persuade their competitors to raise prices, but contend that they never *agreed* to fix prices.

At trial, the government introduced two types of evidence to establish the existence of a conspiracy: evidence of appellants' intent, and evidence of the effects of their agreement. First, current and former employees of the defendant companies and their competitors testified either that they had been parties to the conspiracy or that they refused to cooperate in price-fixing when approached by the conspirators. Second, the government introduced evidence showing the fluctuation of prices during the specific periods covered by the indictment, and telephone records which reflected that telephone conversations between the co-conspirators occurred immediately prior to fluctuations in the price of retail gasoline.

We address the particular facts pertinent to each issue raised on this appeal under separate headings.

## II

### CONSTITUTIONALITY OF THE SHERMAN ACT

■ Miller contends that the trial court erred in denying his motion to dismiss the indictment on the ground that section one of the Sherman Act (15 U.S.C. § 1) is unconstitutionally vague. The constitutionality of a statute is a question of law subject to *de novo* review. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Miller argues that section one is unconstitutionally vague because it fails to provide fair notice of the conduct which it proscribes. Although Miller concedes that the constitutionality of section one was sustained against vagueness challenges shortly after its enactment (*Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913)), he urges us to revisit the issue under contemporary due process standards in light of a 1974 amendment making violation of the statute a felony rather than a misdemeanor.

Miller's contention is frivolous. The sufficiency of fair notice of the acts proscribed by a statute must be examined in the context of the conduct with which a defendant is charged. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963). A defendant cannot challenge a statute on the ground that it may not give fair notice that conduct other than that with which he is charged is forbidden. *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

The indictment charges Miller with price-fixing. Because price-fixing has repeatedly been held to be *per se* illegal under the Sherman Act (*see, e.g., Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 345, 102 S.Ct. 2466, 2473, 73 L.Ed.2d 48 (1982); *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 218, 60 S.Ct. 811, 842, 84 L.Ed. 1129 (1940)), Miller could not have had any reasonable doubt that his conduct violated section one. The district court did not err in denying Miller's motion to dismiss the indictment on the ground that section one of the Sherman Act is unconstitutionally vague.

## III

### SUFFICIENCY OF THE INDICTMENT

Appellants next contend that the trial court erred in denying their motion to dismiss the indictment for insufficiency. Appellants argue that the indictment is insufficient in two respects: (1) it does not allege any overt act, and (2) it contains insufficient factual allegations. The sufficiency

of an indictment is a question of law which we review *de novo*. *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

■ An indictment charging a violation of section one of the Sherman Act is not required to allege any overt act. *Nash v. United States*, 229 U.S. at 378, 33 S.Ct. at 782; *Socony-Vacuum*, 310 U.S. at 224–25 n. 59, 60 S.Ct. at 844–46 n. 59; *accord, United States v. Walker*, 653 F.2d 1343, 1351 (9th Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982). Because the Sherman Act punishes the mere act of conspiring, overt acts in furtherance of the conspiracy need not be alleged. *Nash*, 229 U.S. at 378, 33 S.Ct. at 782.

*United States v. Inryco, Inc.*, 642 F.2d 290 (9th Cir.1981), *cert. dismissed*, 454 U.S. 1167, 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982), does not support appellants' position that an overt act is an essential element of a section one violation. The narrow issue before us in *Inryco* was when the statute of limitations began to run on a continuing Sherman Act violation. We observed that while a Sherman Act conspiracy is technically ripe when the agreement to restrain competition is formed, it remains actionable until its purpose has been achieved or abandoned, and the statute of limitations does not begin to run so long as the co-conspirators continue to engage in overt acts designed to accomplish the objectives of the conspiracy. *Id.* at 293. In this context, we stated that "[t]he essential elements of a continuing Sherman Act violation are the agreement to restrain trade, anti-competitive effect and an overt act committed in furtherance of the conspiracy." *Id.* at 294. We discussed the use of evidence of the commission of overt acts in *Inryco* as a means of proving that the conspiracy had not expired, rather than as a necessary

element of the *corpus delicti* of a conspiracy to violate the Sherman Act.[2]

■ We are persuaded that the indictment contains sufficient factual specificty to withstand appellants' second challenge. An indictment must furnish the defendant with a description of the charges against him in sufficient detail to permit him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead double jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the indictment. *United States v. Lane*, 765 F.2d 1376, 1380 (9th Cir.1985).

Appellants argue that the indictment in the instant case is deficient because it contains few facts other than the situs of the conspiracy and the names of the co-conspirators, does not give notice of any overt acts, and fails to place the conspiracies within a specific time frame. Appellants contend that the indictment is similar to the indictment which we found factually insufficient in *United States v. Cecil*, 608 F.2d 1294 (9th Cir.1979) (per curiam). We disagree.

The *Cecil* indictment charged defendants with conspiring to possess marijuana with intent to distribute. The indictment tracked the language of the pertinent statutes in setting out the elements of the offense, fixed the general situs of the conspiracy ("within the District of Arizona and elsewhere"), named some of the alleged co-conspirators, and alleged that the conspiracies took place "beginning on or before July, 1975, and continuing thereafter until on or after October, 1975." *Id.* at 1295–96. We characterized the indictment as "a rather barren document" because it failed to allege any other facts or circumstances pertaining to the conspiracy, any overt acts done in furtherance thereof, or

---

**2.** In any event, the indictment does allege overt acts. It charges that the co-conspirators discussed and agreed to price increases and to the resolution of pricing differences during meet-

ings and by telephone. *See Inryco*, 642 F.2d at 294 (meetings where information is exchanged are overt acts in furtherance of a conspiracy).

any specific time frame for their commission. *Id.* at 1296–97.

■ The indictment in the instant case contains considerably more factual detail than did the barren document at issue in *Cecil.* The indictment charges that a continuing conspiracy existed for a period of about five years, "[b]eginning at least as early as January 1978, and continuing until at least October 1982." The indictment lists the actions which the co-conspirators took to form and carry out the conspiracy (i.e., discussions by telephone or at meetings at defendants' business premises, bars, restaurants, and gasoline stations which they owned, operated or at which they controlled the retail prices of gasoline), and charges that the defendants attempted to enforce adherence to their price-fixing scheme by informing other competitors of the conspirators' agreements, personally and by telephone.

Although it is true that this indictment places the conspiracies within an open-ended time frame, this defect alone does not automatically render it insufficient. We emphasized in *Cecil* that our decision was "predicated upon the absence of any factual particularity within the indictment," and noted that an indictment must contain "a few basic factual allegations." 608 F.2d at 1297. We have distinguished *Cecil* where an open-ended indictment nevertheless contains sufficient factual detail. *See United States v. Rohrer,* 708 F.2d 429, 435 n. 7 (9th Cir.1983) (indictment which alleged that conspiracy to distribute cocaine extended until "at least" 1980 contained facts which were sufficiently specific to apprise appellants of the charged offenses and to enable them to prepare a defense).

While the instant indictment is not a model of pleading, it does contain sufficient factual particularity to afford appellants adequate notice of the charges against them. The district court did not err in denying appellants' motions to dismiss the indictment.

## IV

### CHALLENGE TO COMPOSITION OF GRAND JURY

Prior to trial, appellants filed a motion to dismiss the indictment on the ground that the indicting grand jury was not drawn from a fair cross-section of the community in violation of (1) the Sixth Amendment; (2) the Jury Selection and Service Act of 1968 (28 U.S.C. § 1861 et seq. (West Supp.1985) (the Act); and (3) the Idaho District Court Local Plan for the Selection of Grand and Petit Jurors (Idaho Local Plan). Appellants' motion was supported by the Affidavit of Lois Heaney of the National Jury Project. The trial court denied the motion without a hearing, finding that there was substantial compliance with the constitution, the Act, and the Idaho Local Plan. Appellants contend that the trial court erred in refusing to hold a hearing on their challenge to the composition of the grand jury.

The determination whether the grand jury was properly constituted requires an application of a legal standard to the undisputed facts presented in the affidavit filed in support of the motion. This presents us with a mixed question of law and fact which we review *de novo. See United States v. McConney,* 728 F.2d at 1202–03.

■ The test for a constitutionally selected jury is the same, whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act. *United States v. Herbert,* 698 F.2d 981, 984 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). The Act provides that, "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Act thus codifies the Supreme Court's decisions interpreting the fair cross-section requirement of the Fifth and Sixth Amendments in the context of the selection and composition of petit ju-

ries, and extends their applicability to the selection and composition of grand juries. The Supreme Court has established a three-part test for determining whether a jury selection process passes constitutional muster. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The test is:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.*

■ Appellants contend that women (who constitute 51% of Idaho's population) were significantly underrepresented on the grand jury and in the venire from which it was drawn. The affidavit showed that only 30% (7 of 23) of the grand jury members and only 42% (37 of 88) of the persons in the venire were women. Appellants' challenge clearly meets the first prong of the *Duren* test. Women constitute a distinctive group in the community. *Duren*, 439 U.S. at 364, 99 S.Ct. at 668.

■ Appellants' challenge, however, fails to satisfy the second prong of the *Duren* test, which requires that the defendant show underrepresentation in "venires" from which "juries" are selected.[3] *Id.* (emphasis added). It appears to us that the Supreme Court's use of the plural in setting up the *Duren* test is a clear indication that a violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury. While juries must be drawn from a source fairly representative of the community, the composition of *each jury* need not mirror that of the community. *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975); *United States v. Nelson*, 718 F.2d 315, 319–20 (9th Cir. 1983). Appellants do not claim that underrepresentation occurred generally or in venires other than their own. The Heaney affidavit would not support such a claim.[4]

■ Appellants claim that the trial court's refusal to hold an evidentiary hearing on their challenge to the composition of the grand jury contravened section 1867(d) of the Act because they made the prima facie showing contemplated by the Supreme Court in *Duren*. We disagree. Section 1867(d) authorizes the presentation of evidence by the moving party on a motion challenging compliance with grand jury selection procedures only where the motion contains a sworn statement of facts which, if true, would constitute a "substantial failure to comply" with the provisions of the Act. 28 U.S.C. § 1867(d). This is the same standard ("substantial failure to comply") which the Act specifies for the ultimate determination whether the grand jury was properly selected. *Id.* Thus, where the facts are undisputed, the standard for entitlement to an evidentiary hearing on a fair cross-section challenge is identical to that applicable to the ultimate determination whether the indictment should be dismissed. *See United States v. Layton*, 519 F.Supp. 946, 955–56 (N.D.Cal.1981) (refusing to hold evidentiary hearing where there is no sworn statement of facts supplying factual foundation for violation of Act). Because appellants' motion and supporting affidavit failed to establish that

---

**3.** The *Duren* test is stated in the conjunctive; therefore, we need not consider whether appellants' challenge also fails to meet the third prong of the *Duren* test. Nevertheless, logic dictates that if appellants cannot demonstrate underrepresentation in venires generally, they could not show that the underrepresentation resulted from systematic exclusion of women in the jury selection process.

**4.** Although Heaney states that she examined other venires, she does not allude to any findings of underrepresentation. Moreover, the Affidavit submitted by District Court Clerk Clapp at the request of the government affirmatively establishes that women were *not* substantially underrepresented in venires or grand juries generally.

underrepresentation occurred generally or in venires other than their own, the district court did not err in denying them an evidentiary hearing on their challenge to the composition of the grand jury.[5]

## V

### JENCKS ACT MATERIALS

 Appellants next contend that the government failed to disclose to the defense all materials that must be produced pursuant to the Jencks Act, 18 U.S.C. § 3500 (1985), and that the district court erred in declining to examine these materials *in camera.* Prior to trial, the government provided appellants with redacted grand jury transcripts, FBI agent interview notes for government witnesses, and redacted memoranda prepared by government counsel prior to trial which contained summaries of interviews with government witnesses. Appellants claim that they were entitled to receive the following material: (1) the redacted portions of the grand jury transcripts; (2) the interview notes for government witness Peter Martinez taken by government counsel; and (3) the redacted portions of memoranda regarding interviews with four government witnesses, prepared by government counsel. We review a trial court's rulings on Jencks Act issues for abuse of discretion. *United States v. Cowley,* 720 F.2d 1037, 1040 n. 1 (9th Cir. 1983).

### A. *Redactions to Grand Jury Transcripts*

Appellants made a motion *in limine* seeking production of the redacted portions of the grand jury transcripts. The government represented to the court that the redacted portions contained extraneous materials that did not fall within the definition of a witness' "statement" under the Jencks Act. The trial court denied the motion without inspecting the redacted portions of the grand jury transcript *in camera.*

The Jencks Act and Fed.R.Crim.P. 26.2 require the government to furnish criminal defendants with all "statements" of a witness which relate to the subject matter of the witness' trial testimony. 18 U.S.C. § 3500(b) (1982); Fed.R.Crim.P. 26.2(c). The term "statement" as used in section 3500 refers to:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

5. Appellants also argue that selection of the grand jury violated the Idaho Local Plan (established to implement the provisions of the Constitution and the Act) on three grounds: (1) there was a failure to adhere to the Local Plan's specifications for the geographical distribution of potential grand jurors; (2) there was a deviation from the procedures mandated by the Local Plan for applying quotients in impaneling juries; and (3) women were improperly excused from jury service.

The fact that no grand jurors were impaneled from one of the three divisions in Idaho is irrelevant. Neither the Constitution nor the Act require a geographical balance among divisions; in fact, the Act specifically provides for the selection of grand jurors from a single division. *United States v. Herbert,* 698 F.2d 981, 984 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983).

Although the deviations from the Local Plan's selection procedures did constitute technical violations of the Local Plan, they do not rise to the level of a "substantial failure to comply" with the Act. *See United States v. Carmichael,* 685 F.2d 903, 911 (4th Cir.1982) (fact that grand jury was drawn from slightly smaller pool than that specified by Local Plan did not amount to a substantial violation of the Act), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983); *United States v. Bearden,* 659 F.2d 590, 601–02 (5th Cir.1981) (although statistically non-random methods were used to select jurors from pool, their use did not constitute a substantial violation of the Act so long as selection method did not discriminate against individuals or groups), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982).

Finally, appellants' allegation that some women were improperly excused for the entire term of court when they requested only temporary excusals due to pregnancy or nursing responsibilities, if true, constituted a technical violation of the Local Plan. The affidavit which appellants submitted in support of their motion, however, does not establish that the number of women excused was disproportionate to the number of men excused. Because appellants failed to demonstrate that the alleged improper excusals prevented their grand jury from containing a fair cross-section of the community, there was no substantial failure to comply with the Act.

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e); *see also* Fed.R.Crim.P. 26.2(f). If the government claims that any statement ordered to be produced contains matter which does not relate to the subject matter of the witness' testimony, the statute provides that the court "shall" order the government to deliver the statement for inspection by the court *in camera*. 18 U.S.C. § 3500(c); Fed.R.Crim.P. 26.2(c).

 The government argues that because the redacted portions of the transcripts did not contain "statements" of a witness to the grand jury, the trial court was not required to conduct an *in camera* examination. We disagree. Statements made by a witness before a grand jury are covered by the Jencks Act. 18 U.S.C. § 3500(e)(3). Denial of a motion to produce Jencks Act materials is erroneous if based solely on government counsel's assertion that the undisclosed materials do not contain "statements" covered by the Jencks Act. *Ogden v. United States,* 303 F.2d 724, 736–37 (9th Cir.1962); *accord, United States v. Wables,* 731 F.2d 440, 445 (7th Cir.1984); *United States v. Strahl,* 590 F.2d 10, 14–15 (1st Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *United States v. Conroy,* 589 F.2d 1258, 1273 (5th Cir.), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). The trial judge has a duty to administer the statute so as to balance the conflicting interests which it protects—safeguarding government papers from disclosure, and the interests of the accused in having the government produce "statements." *United States v. Long,* 715 F.2d 1364, 1366 (9th Cir.1983). The trial court abused its discretion by failing to conduct an *in camera* examination of the redacted portions of the grand jury transcripts.

 Ordinarily, where the trial judge fails to review materials *in camera* because of a claim by the government that they are not relevant to the subject matter of the witness' trial testimony, we will vacate the judgment and remand the case with directions to the trial court to conduct a belated *in camera* review to determine whether the error was prejudicial. *United States v. Long,* 715 F.2d at 1367; *United States v. Peters,* 625 F.2d 366, 371 (10th Cir.1980). The rationale for remand is that determinations of relevancy and materiality present procedural and evidentiary questions, which traditionally rest within the good sense and experience of the district court judge. *See Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963).

 We need not remand in the instant case, however, because the issue before us is not whether the undisclosed portions of the transcript are material and relevant, but whether they contain any words spoken by the witness. The simple task of comparing the unredacted and redacted transcripts does not require an exercise of the exclusive functions of the trial judge in ruling on fact-based evidentiary or procedural matters in the first instance, nor does it entail an understanding of the theory of the prosecution's case or of the potential defenses to the indictment.

Our review of the redacted portions of the grand jury transcripts reveals that the government correctly represented that the excised portions contained no words spoken by witnesses. All of the undisclosed material in the grand jury transcripts consisted of innocuous procedural "housekeeping" announcements by government lawyers. Because appellants received copies of all portions of the grand jury transcripts which contained any words spoken by a witness who testified at trial, the trial court's error in refusing to conduct an *in camera* examination of the unredacted transcript of the grand jury proceedings was harmless.

### B. *Government Counsels' Interview Notes For Witness Peter Martinez*

Prior to trial, the government produced FBI 302 forms (witness interview notes taken by FBI agents) containing statements made by Peter Martinez, a key government witness. On cross-examination, counsel for Miller inquired into Martinez's interviews with FBI agents and discovered that government counsel were also present. Miller moved for production of any notes not already produced pursuant to the Jencks Act. The court denied appellants' motion without inspecting the notes. Appellants asked the court to order that the notes be filed under seal and made a part of the record. Although the court granted the motion, the notes were never made part of the record.

The government contends that the Martinez interview notes taken by government counsel were not subject to disclosure and production because they did not contain "statements" covered by the Jencks Act. By arguing at trial that the notes were not discoverable, government counsel implicitly admitted that counsel had taken notes. Because notes taken by government counsel during trial preparation interviews of a key government witness might well have contained Jencks Act statements, the district court erred by relying on government counsel's assertion that the notes did not contain Jencks Act statements. *See Ogden,* 303 F.2d at 736–37; *see also United States v. Lutz,* 621 F.2d 940, 948 (9th Cir.1980), *cert. denied,* 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980) and 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981) (once witness testified that interviewing government attorney took notes, it was error to fail to conduct inquiry as to whether he had adopted or approved those notes).

The district court's error, however, proved to be harmless. Subsequent to the filing of the briefs on this appeal, the government sought and obtained a remand to the district court for an evidentiary hearing pursuant to Fed.R.App.P. 10(e) to determine why the notes were missing. The district court found that: (1) the record on

appeal could not be augmented to include the missing notes because the notes had been irretrievably lost through inadvertent government error; (2) the ultimate fault for the failure to have the notes filed lay with counsel for the government; and (3) sanctions were inappropriate.

Appellants argue that the record of the evidentiary hearing held on remand demonstrates that the notes were adopted by Martinez and are discoverable under Fed.R. Crim.P. 26.2(f)(1), or alternatively, that the notes constituted a "partially" verbatim record of Martinez's statements and are discoverable under Fed.R.Crim.P. 26.2(f)(2). We disagree.

The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witness' oral statements. 18 U.S.C. § 3500(e); *see United States v. Augenblick,* 393 U.S. 348, 354–55, 89 S.Ct. 528, 532–33, 21 L.Ed.2d 537 (1969) (rough notes of witness interview not a "statement" covering entire interview); *United States v. Spencer,* 618 F.2d 605, 606 (9th Cir.1980) (notes which are an "unsiftable mix of witness testimony, investigators' selections, interpretations, and interpolations" are not producible "statements"); *Wilke v. United States,* 422 F.2d 1298, 1299 (9th Cir.1970); (whatever the "spirit" of the Jencks Act, rough notes are not covered by its terms).

Government counsel's testimony at the evidentiary hearing on remand established that Martinez did not adopt the notes, nor were they substantially verbatim transcriptions of Martinez's statements. Counsel testified that at no time did counsel show Martinez the notes, read the notes back to Martinez, or verbally summarize their contents in his presence. Counsel also testified that their notes contained only fragmentary quotes of three or four words from Martinez. The government's evidence at the evidentiary hearing concerning the missing notes was uncontradicted.

Whether notes of an interview can fairly be said to be a witness' own statement is a fact question. The trial court's

determination on this issue may not be disturbed unless it is clearly erroneous. *United States v. Goldberg*, 582 F.2d 483, 486 (9th Cir.1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). We are not persuaded that fragmentary quotations contained in counsel's witness interview notes constitute substantially verbatim statements covered by the Jencks Act. *See United States v. Ben M. Hogan Co.*, 769 F.2d 1293, 1300–1301 (8th Cir.1985) (prosecutor's witness interview notes containing fragmentary quotes not "statements" covered in their entirety by the Jencks Act; furthermore, trial court need not order production of scattered fragmentary quotes unless circumstances are extremely compelling).

Moreover, we have held that the unrefuted testimony of a note-taking government agent is adequate to establish that materials are not statements within the meaning of the Jencks Act because they were not adopted by the witness nor were they a substantially verbatim transcription of the witness's comments. *See United States v. Griffin*, 659 F.2d 932, 937 (9th Cir.1981) (FBI agent's unrefuted testimony that her rough notes of government witness interviews were neither read nor adopted by the interviewee, and that notes were not a verbatim transcription of the interviewee's remarks, was adequate to establish that notes would not be producible under the Jencks Act), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2019, 72 L.Ed.2d 473 (1982).

In short, appellants were afforded an opportunity for further inquiry on the question whether the notes contained "statements" at the evidentiary hearing on remand. *See Ogden*, 303 F.2d at 736–37 (remand for further inquiry as to whether notes constituted "statements" producible under the Jencks Act). The district court's finding that the missing notes could not have contained statements covered by the Jencks Act was based upon the unrefuted testimony of government counsel and was not clearly erroneous. Therefore, the district court's error at trial was rendered harmless by its subsequent findings at the evidentiary hearing on remand.

C. *Redacted Portions of Government Counsels' Memoranda*

The government also furnished appellants with memoranda of interviews with four government witnesses, portions of which had been excised. By motion *in limine*, appellants asked the court to order the remaining portions produced or to suppress the testimony of the witness. The government represented to the trial court that the excised portions represented only counsels' notes and thoughts regarding strategies for further interviews. Counsel asserted that the excised portions of these memoranda were work products, and did not constitute "statements" of a witness covered by the Jencks Act. The district court denied appellants' motion.

■ Memoranda containing summaries of witness interviews are, like any other "statements," potentially producible only if adopted by the witness or if they contain a substantially verbatim recital of the witness's oral statement. *Ogden*, 303 F.2d at 734–35. Reports which contain only a government agent's "epitomization, interpretation, or impression" of an interview are not "statements" covered by the Jencks Act. *Id.* at 735 (*citing Palermo v. United States*, 360 U.S. 343, 352–53, 358–60, 79 S.Ct. 1217, 1224–25, 1227–28, 3 L.Ed.2d 1287 (1959)). The district court apparently concluded that the memoranda contained no "statements," relying exclusively upon government counsel's representation that they contained work product.

■ The district court erred in refusing to examine the unredacted memoranda *in camera*. In *Ogden*, we cautioned that it is inappropriate for a court to allow the government unilaterally to determine whether a writing is "substantially verbatim" or "signed, or otherwise adopted or approved by the witness." 303 F.2d at 737; *see also Goldberg v. United States*, 425 U.S. 94, 98, 96 S.Ct. 1338, 1342, 47 L.Ed.2d 603 (1976) (rejecting blanket exception to Jencks Act for attorney work product).

We have reviewed the redacted portions of the memoranda to determine whether they contain a notation of any words spoken by a witness. The redacted portions contain only notations by government counsel regarding strategies for future interviews of other witnesses, work product impressions, and ·cross-references to other memoranda. Because these materials are plainly not statements covered by the Jencks Act, the district court's error in failing to review the material *in camera* was harmless.

## VI

## ADMISSIBILITY OF HEARSAY STATEMENTS

Appellants assert that the district court erred in admitting portions of the testimony of six government witnesses which contained hearsay statements. Appellants claim that (1) the admission of these statements as co-conspirator statements under Fed.R.Evid. 801(d)(2)(E) was improper because an inadequate foundation was laid, and (2) their admission violated appellants' Sixth Amendment confrontation rights because there was no showing that the declarants were unavailable to testify.[6]

■ A trial court's determination whether evidence is supported by a proper foundation is reviewable for an abuse of discretion. *United States v. Ford,* 632 F.2d 1354, 1377 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981). Statements made by co-conspirators are admissible if there is sufficient evidence to support the inference that the statements were made in furtherance of the conspiracy while the conspiracy was in existence. *United States v. Layton,* 720 F.2d 548, 555 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). We will not disturb the trial court's finding on this question unless the judge could not reasonably have come to that conclusion. *United States v. Tille,*

729 F.2d 615, 620 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) and — U.S. ——, 105 S.Ct. 164, 83 L.Ed.2d 100 (1984). The trial court's finding that a statement was made in furtherance of a conspiracy is entitled to deference. *Layton,* 720 F.2d at 556 n. 4.

We next examine the testimony of each of the six witnesses to determine if error occurred in the admission of the extrajudicial statements.

### A. *Critser Testimony*

Raymon Critser leased an Amoco Station from Leese Oil, a company owned by two of the co-conspirators (James Leese, Jr. and James Leese, Sr.), but had independent pricing authority. Critser testified to statements by the Leeses warning him that he should keep his prices higher than those at a nearby Continental Station and not start a price war, and to their assertion that Continental's low prices were only temporary.

### 1. *Non-Hearsay Statements*

■ We need not consider whether Critser's testimony was admissible as a co-conspirator statement or whether it violated appellants' confrontation rights because Critser's testimony was not hearsay. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*" (emphasis added). ·This testimony was evidently offered to prove the existence of a conspiracy between the Leeses and Continental. The truth of the statements made by the Leeses to Critser is not at issue; their significance lies solely in the fact that the Leeses made them. Thus, Critser's testimony was non-hearsay because it was not offered to prove the truth of the Leeses' statements.

---

**6.** Although appellants failed to raise a confrontation clause objection at trial, we review their confrontation clause arguments for plain error because a failure to comply with the confronta-

tion clause infringes on substantial rights. *United States v. Jarrad,* 754 F.2d 1451, 1456–57 (9th Cir.1985); *United States v. Ordonez,* 737 F.2d 793, 799 (9th Cir.1984). .

### 2. *Authentication of Telephone Call*

█ Appellants next argue that Critser's testimony concerning statements made to him by Bleisner during a telephone call initiated by Bleisner was inadmissible because this evidence was not properly authenticated under Fed.R.Evid. 901. Rule 901 imposes a requirement of authentication or identification as a condition precedent to admissibility. This requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a).

Although self-identification by a caller does not provide sufficient evidence of identity under Rule 901, the Advisory Committee Notes make clear that "additional evidence of . . . identity" may be introduced to furnish the requisite foundation. Advisory Committee Note to Rule 901(b)(6). The Notes state that the additional evidence "need not fall in any set pattern" (*id.*), and may include such evidence as "contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed.R.Evid. 901(b)(4). The Notes also indicate that "a . . . telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." Advisory Committee Note to Rule 901(b)(4).

The fact that Critser received a call from James Leese, Jr. ten minutes later, during which Leese made reference to Bleisner's earlier call, provides sufficient authentication of Bleisner's identity to sustain the trial court's ruling. *See United States v. Espinoza,* 641 F.2d 153, 172 (4th Cir.) (identity of caller established by evidence that he made a reply or response in a manner expected to be evoked by an earlier communication made to him by the witness), *cert. denied,* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981); *United States v. John,* 518 F.2d 705, 709–10 (7th Cir.1975) (context and timing of telephone call provided sufficient authenticating foundation for its admission); *United States v. Lococo,* 450 F.2d 1196, 1199–00 (9th Cir.1971) (evidence of conduct by a defendant or by others so tied to the telephone calls may establish discernible pattern by which identity of caller is revealed), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972). The trial court did not abuse its discretion in finding that the government established an adequate foundation for Bleisner's identity as the caller.

### 3. *Compound Hearsay*

█ Finally, appellants assert that Critser's compound hearsay testimony regarding his conversation with Rick Gerdes violated Rule 801(d)(2)(E) and the confrontation clause. Critser testified that Gerdes told him that Continental had requested (through co-conspirator George Frost) that Gerdes persuade Critser to raise his gasoline prices. Appellants assert that even assuming that *Frost's* statement to Gerdes was admissible under Rule 801(d)(2)(E), *Gerdes* was not a co-conspirator and therefore *his* statements to Critser do not fall within Rule 801(d)(2)(E).

We disagree. The testimony to which appellants object was elicited on cross-examination by counsel for the Leeses, who continued his cross-examination of Critser by agreement of all defense counsel after James Leese, Jr. had pled *nolo contendre* and James Leese, Sr. had been dismissed. Appellants may not seek reversal on the basis of their own evidentiary errors. *See Mercer v. Theriot,* 377 U.S. 152, 154, 84 S.Ct. 1157, 1159, 12 L.Ed.2d 206 (1964) (admission of hearsay evidence not a deprivation of substantial justice where counsel for respondent did not object to evidence but in fact elicited same evidence in his examination of the witness); *Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir. 1984) (attorney may waive client's right to raise error on appeal by eliciting inadmissible evidence himself). Appellants' confrontation clause argument is similarly flawed; Gerdes was killed prior to trial and the Critser testimony was elicited by defense counsel. Counsel for appellants conceded at oral argument that there is no dispute that Gerdes was dead at the time, and that Gerdes' death was a matter of record.

Therefore, the district court did not abuse its discretion in admitting Critser's testimony regarding his conversation with Gerdes.

### B. Martinez Testimony

■ Peter Martinez, who worked for Miller and acted as his agent in working the market, testified to statements made during conversations with six service station operators. Martinez testified that he asked the operators to raise their gasoline prices, and that some operators agreed to do so, while others refused. Appellants argue that because the declarant service station operators were not members of the conspiracy, the statements were improperly admitted under Rule 801(d)(2)(E). The government contends that these statements were not hearsay because they were not offered for their truth, but simply to clarify Martinez's own conduct in furtherance of the conspiracy and to establish the declarants' state of mind.

The trial court did not err in admitting these statements. Martinez's testimony was not offered to prove the truth of the statements made to him by the service station operators. The significance of these statements is to prove Martinez's own conduct in furtherance of the conspiracy. Therefore, Martinez's testimony was not hearsay and we need not consider whether the statements were admissible as co-conspirator statements. *See* Fed.R. Evid. 801(c).

Martinez also testified that Howard Miller told David Miller and Martinez that he would not be involved with them in any price-fixing. The government contends that the context of Miller's statement indicates that it was in fact an *approval* of their price-fixing activities, and therefore furthered the conspiracy. We disagree. We are satisfied, however, that the trial

court's error was harmless beyond a reasonable doubt because of the weight of the evidence of guilt properly considered by the jury.

### C. Irwin Testimony

■ Tim Irwin, part owner of a wholesale gasoline supplier, testified that James Leese, Jr. had asked him to persuade Wayne Davis, an independent service station owner, to raise his prices. Appellants contend that James Leese, Jr. was available to testify and therefore admission of the hearsay testimony was not necessary. Necessity is demonstrated by a showing of unavailability. *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980).

Admission of Irwin's testimony did not violate appellants' confrontation rights. James Leese, Jr.'s status as a codefendant rendered him unavailable to the prosecution. *United States v. O'Connor*, 737 F.2d 814, 820 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1198, 84 L.Ed.2d 343 (1985). Although Leese had entered a plea of *nolo contendre*, he had not yet been sentenced; he retained his Fifth Amendment rights while awaiting sentencing. *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978); *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). Because the record demonstrated that Leese was unavailable as a witness for the government at the time of trial, the trial court did not err in admitting Irwin's testimony.[7]

### D. Furness Testimony

Rick Furness testified to a telephone conversation which he had with Earl Pixton.

---

7. Appellants' argument that the Fifth Amendment privilege must be asserted and that the trial court must make an express ruling on the issue of unavailability is meritless. *See United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982) (where trial court's knowledge of the case and of the testimony expected of the witness leads it to conclude that witness may legitimately assert Fifth Amendment privilege to essentially all relevant questions, Fifth Amendment privilege

need not be raised in response to specific questions); *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974) (where counsel for a former co-defendant who entered his plea prior to trial advised the court that his client would claim his Fifth Amendment privilege, witness need not take the stand to assert privilege), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975).

Pixton told Furness that gas stations in Pocatello would be raising prices to a specified level the next day. Furness responded that he would do his own survey and set his own prices. Appellants objected to the admission of this testimony, claiming that (1) there was no proper foundation under Rule 901 for the identity of the caller; (2) there was not sufficient evidence that the declarant was a member of the conspiracy; (3) the statement was not made in furtherance of the conspiracy; and (4) its admission violated the confrontation clause because there was no showing that Pixton was unavailable.

 These contentions are meritless. Pixton's familiarity with the conversation during Furness' subsequent telephone call furnishes sufficient authentication of identity under Rule 901. *See* Advisory Committee Notes to Rule 901; *United States v. Espinosa,* 641 F.2d at 172; *United States v. John,* 518 F.2d at 709–10; *United States v. Lococo,* 450 F.2d at 1199–1200. The record contains sufficient evidence against Pixton to establish that he was a member of the conspiracy. We have held that statements made by a conspirator in an attempt to obtain cooperation from outside parties are in furtherance of the conspiracy. *United States v. Layton,* 720 F.2d at 556. In determining admissibility, it is irrelevant whether such statements are successful in inducing the witness to cooperate. *Id.* at 556 n. 5. Finally, Pixton was unavailable to testify during trial as a government witness because he had not yet been sentenced following his plea of *nolo contendre* prior to trial. *United States v. Trejo-Zambrano,* 582 F.2d at 464; *United States v. Roberts,* 503 F.2d at 600.

#### E. *Victor Testimony*

 Maynard Victor testified that he received several telephone calls from unin-

dicted co-conspirator Hardy. Hardy informed Victor of a gasoline price increase in the Pocatello market, and asked if Victor's company would support the increase. Because there were a number of conversations, Victor was unable to recall the exact dates on which the conversations occurred. Appellants contend that this testimony was not admissible under Rule 801(d)(2)(E) because (1) the statements were not shown to be made during the conspiracy; and (2) they were not made in furtherance of the conspiracy.

We reject both contentions. First, the evidence showed that the statements were made during the five-year life of the conspiracy. Victor *was* able to recall four conversations with Hardy which occurred within the five years previous to trial, which would have been within the period covered by the indictment. Such an approximate time frame provides a sufficient foundation for admissibility. *See United States v. Saavedra,* 684 F.2d 1293, 1298 (9th Cir.1982) (witness' testimony that he received fraudulent telephone calls within two to three years prior to trial is sufficient approximation of time frame to provide adequate foundation for admission of co-conspirator statements). Second, Hardy's statements were made in an attempt to solicit Victor's cooperation, and thus were made in furtherance of the conspiracy. *United States v. Layton,* 720 F.2d at 556. Therefore, the trial court did not err in admitting Victor's testimony.

### VII

### ADMISSIBILITY OF MOUNTAIN BELL TELEPHONE RECORDS

Appellants claim that the district court erred in admitting Mountain Bell Telephone

---

*United States v. Ordonez* is clearly distinguishable. In *Ordonez,* this court held that the admission of hearsay statements violated the confrontation clause because the government failed to prove unavailability. 737 F.2d at 802. In *Ordonez,* like the instant case, the confrontation clause objection was not raised below. However, the statements in *Ordonez* were not admissible under any recognized exception to the

hearsay rule; the declarants were unidentified; and there was nothing in the record to establish unavailability. In the instant case, the government laid an adequate foundation for admissibility of the extrajudicial statements under Rule 801(d)(2)(E). The declarants were identified. The record contains ample evidence that James Leese, Jr. was not sentenced on his *nolo contendre* plea until after trial.

computerized billing records and subscriber information demonstrating a pattern of telephone calls between the appellants and between appellants and other gasoline retailers, which corresponded in time to gasoline price increases. Appellants argue that the government failed to lay an adequate foundation for the admission of Mountain Bell records under the business records exception to the hearsay rule (Fed. R.Evid. 803(6)).

A writing is admissible under Fed.R.Evid. 803(6) if two foundational facts are proved: (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity. *United States v. Ordonez*, 737 F.2d at 805. These facts must be proved through the testimony of the custodian of the records or other qualified witness, though not necessarily the declarant. *Id.* The record will not be admissible, however, if the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *Id.* We review the district court's decision to admit evidence under the business records exception to the hearsay rule for an abuse of discretion. *Burgess v. Premier Corp.*, 727 F.2d at 833, 835–36.

### A. Computer-Generated Toll and Billing Records

Appellants contend that the government failed to lay an adequate foundation for the admission of computer-generated toll and billing records which were offered through the testimony of Manning, a Mountain Bell billing supervisor. Appellants argue that because Manning testified that he had no knowledge of the maintenance and technical operation of the computer which generated the records, and that the records were generated by another office of the telephone company, he was not a proper custodian through which the records could be introduced.

Appellants' arguments are meritless. It is not necessary that the computer pro-

grammer testify in order to authenticate computer-generated records. *See* Notes of the Committee on the Judiciary, S.Rep. No. 93–1277, 93rd Cong., 2d Sess. 17 (1974) ("[I]n the case of a computer printout [the foundation for its admissibility must be established by] the company's computer programmer *or one who has knowledge of the particular record system.*") (emphasis added); *United States v. Young Bros., Inc.*, 728 F.2d 682, 694 (5th Cir.) (testimony of state official responsible for custody of computer-generated records was sufficient to authenticate records; computer programmer need not testify), *cert. denied,* — U.S. ——, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); *see also United States v. De Georgia*, 420 F.2d 889, 893 n. 11 (9th Cir.1969) (government need not produce expert testimony as to mechanical accuracy of computer where it presented evidence that computer was sufficiently accurate that company relied upon it in conducting its business).

Manning testified that he was familiar with the methods by which the computer system records information. Manning further testified that he was the custodian of the records, that they had been made contemporaneously by the computer itself, and that they were made in the regular course of business. Manning's testimony was sufficient to establish the accuracy and trustworthiness of the computer-generated records.

### B. Customer Copies of Mountain Bell Records

Appellants also challenge the admission of copies of telephone bills received by the V–1 Oil Company and introduced through the company's vice-president, Gary Huskinson. Appellants argue that Huskinson was not a proper custodian or other qualified witness who could attest to the authenticity of the customer copies of the records, relying upon *NLRB v. First Termite Control Co.*, 646 F.2d 424 (9th Cir. 1981).

Appellants' reliance on *First Termite* is misplaced. In *First Termite*, we held inad-

missible bills whose foundation was provided by an employee of a company which received the records, who had no knowledge of how the business made or maintained its bills or any interest in verifying their accuracy. *Id.* at 428–29. Moreover, in *First Termite* the record did not contain any circumstances that would demonstrate the trustworthiness or accuracy of the records at issue nor was there any testimony regarding the preparation of the records. *Id.; see also Ordonez*, 737 F.2d at 805 (where *no evidence* was offered by *any person* that records were kept by persons having knowledge of the facts recorded, that the entries were made at or near the time of the transaction, or that the persons who made the entries were truthful and had a clear recollection of the facts, ledger entries were inadmissible because there was no knowledgeable individual present at trial who could be subjected to meaningful cross-examination). In contrast, in the instant case a proper foundation for the introduction of the records was established through Manning's testimony regarding the method of preparation and accuracy of the records. The record discloses no reason to doubt the trustworthiness of the records. The trial court did not err in admitting the customer copies.

### C. *Subscriber Information Excerpts From Microfiche Records*

Sheila Workman, an assistant supervisor in Mountain Bell's security department, testified that she prepared exhibits summarizing and listing subscriber information stored on microfiche at government counsel's request. The information showed the name, address, and telephone number of each subscriber and the date service was initiated. Appellants contend that admission of these lists violated Fed.R.Evid. 803(6), 1002 (the best evidence rule), and was not admissible under Rule 1006 (summaries of voluminous documents).

---

**8.** Admission of the lists also violated the best evidence rule. Rule 1002 requires that the original of a writing be offered into evidence "except as otherwise provided by these rules." Because the lists were not admissible as business records

We agree that the lists should not have been admitted under Rule 803(6). The summaries were prepared in response to litigation rather than in the regular course of business. Business records prepared solely for purposes of litigation lack trustworthiness. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258–59 (9th Cir.1984). Furthermore, the lists were not admissible as summaries under Rule 1006 because the government failed to provide appellants with a copy of the underlying documents prior to the introduction of the summary. *See Paddack*, 745 F.2d at 1259 (proponent of summary must show that (1) the underlying materials on which summary was based are admissible, and (2) underlying documents were made available to opposing party for inspection prior to their introduction).[8]

Although admission of the lists was error, it was not prejudicial. The subscriber information contained in Workman's summaries was ultimately admitted in the form of computer-generated bills through the testimony of Manning. Therefore, the error in admitting the lists was harmless beyond a reasonable doubt.

### VIII

### JURY INSTRUCTIONS

Finally, appellants contend that the district court erred in failing to give appellants' proposed jury instructions. A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence. *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985) (as amended). So long as the instructions given fairly and adequately cover the issues presented, the formulation of the instructions or choice of language is a matter within the trial court's discretion. *Id.*

---

under Rule 803(6) or as summaries under Rule 1006, the best evidence rule applies and the government was obligated to furnish appellants with the original underlying records, i.e., the microfiche.

### A. The Intent Element of a Sherman Act Violation

■ Appellants argue that the trial court abused its discretion by refusing to give appellants' proposed instruction regarding the intent element of a Sherman Act violation. Appellants' proposed instruction was modeled on an instruction which we approved in *United States v. Krasn*, 614 F.2d 1229, 1237 n. 8 (9th Cir. 1980).[9]

Appellants claim that the district court's instruction was deficient because it failed to lay out the two-tiered intent element of a Sherman Act violation explained by the Supreme Court in *United States v. United States Gypsum Co.*, 438 U.S. 422, 443–44, 98 S.Ct. 2864, 2876–77, 57 L.Ed.2d 854 (1978), and followed by this court in *Krasn* (i.e., that the intent element would be met only if the jury found that the defendants' acts either (1) had the effect of reducing or eliminating competition and were undertaken with knowledge of the probable effect, or (2) were undertaken with the conscious purpose of reducing or eliminating competition).

The trial court instructed the jury that in order to find that the defendants were members of a conspiracy, the jury must find that each defendant had a specific intent. Specific intent was defined by the trial court as voluntarily and intentionally doing an act which the law forbids, intending to disobey the law. Further, the trial court instructed the jury that each defendant had to know of the general purpose and scope of the conspiracy and adopt this as his own.

We are persuaded that the trial court's instruction informed the jury as to the alternative intent requirements of the *Gypsum/Krasn* test. Although not given in the format of the instructions approved in *Gypsum* and *Krasn*, the trial court's instruction, taken as a whole, did not constitute error.

### B. Instructions Regarding Independent Decision-Making

■ Appellants next contend that the trial court abused its discretion by refusing to give appellants' proposed jury instruction regarding the distinction between meeting for the purpose of fixing prices and meeting for the purpose of exchanging information to be used in independent decision-making.[10] Appellants rely on *United*

---

9. Appellants' requested jury instruction No. 20 was as follows:

As you will recall, I have instructed you that there are five elements that must be proved beyond a reasonable doubt before you may find a defendant guilty. The first three are that the defendants formed the conspiracy charged in the indictment; that the conspiracy charged existed at or about Janaury [sic] 1978, continuing until October 1982; and that the accused knowingly became a member of the conspiracy. I have just spent the last few minutes defining what the law means by the word "conspiracy" in these first three elements.

Now, there is another element which you must also find to be proved beyond a reasonable doubt before you may find a defendant guilty. A defendant may not be found guilty unless you find that he had the intent to reduce or eliminate competition in the sale of gasoline. I will now define what is meant by the word "intent".

Intent is the state of mind with which an act *is done, and may differ depending upon the* circumstances. If you find that the acts of a defendant and his alleged co-conspirators had the effect of reducing or eliminating competition in the retail sale of gasoline, then the intent element is satisfied only if you also find that the defendant undertook those acts knowing that they would probably have that effect. However, if you find that the acts of the defendant and his co-conspirators did not have the effect of reducing or eliminating competition, then the intent element is satisfied only if you also find that the defendant undertook those acts with the conscious purpose of reducing or eliminating competition on those three projects. [sic] If you fail to find the element of intent has been proved beyond a reasonable doubt, then you must find the defendant not guilty.

10. Appellants' requested jury instruction No. 19 was as follows:

The mere fact that one party wants or even urges another party to adopt a certain pricing policy, and that the other party later sets a price consistent with that policy, does not establish that a conspiracy has been formed. So long as each defendant's business decisions were made as a matter of its individual choice prompted alone by the desirability of the deci-

*States v. Standard Oil Co.,* 316 F.2d 884 (7th Cir.1963).

In *Standard Oil,* the Seventh Circuit held that an oil company is not precluded from acting in a normal fashion in setting its prices merely because it hears of a competitor's price change, so long as the pricing "was not pursuant to an understanding or agreement." *Id.* at 896. The essence of *Standard Oil* is that for a pricing policy to be violative of the Sherman Act, it must be the result of an illegal agreement. *See also Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 885 (9th Cir.1982) (evidence of meetings is not sufficient to prove a conspiracy, absent an agreement), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). By instructing the jury that there could be no Sherman Act violation absent an illegal agreement, the trial court properly encompassed the distinction between price-fixing and exchanging price information in its instruction.

### C. *Instruction Regarding Overlapping Conspiracies*

■ Finally, appellants assert that the trial court abused its discretion by failing to give appellants' proposed instruction concerning the import of proof of multiple overlapping conspiracies where a single overarching conspiracy is charged.[11] Appellants argue that because the jury could possibly have been confused by the defendants' participation in a number of smaller conspiracies, the court was required to instruct the jury to find whether the defendants had participated in the single conspiracy charged in the indictment.

The trial court instructed the jury that it was insufficient for the government to

prove that the defendant was a member of any conspiracy; the government had to prove that the defendant was a member of the single conspiracy charged in the indictment. Thus, any variance between the indictment and the evidence was cured by the trial court's instruction, and appellants' claim of error is meritless.

### IX

### CONCLUSION

We find no ground for reversal in any of appellants' contentions. The judgment is AFFIRMED.

---

sion for that defendant's own business, and not as a result of a conspiratorial agreement, its action is an exercise of a company's right to decide the terms on which it will do business and does not constitute the formation of or participation in an [sic] conspiracy.

11. Appellants' requested jury instruction No. 26 was as follows:

A defendant cannot be convicted under an indictment charging participation in one sin-

gle conspiracy simply because he may have been a participant in a different conspiracy, even if the schemes themselves overlap or are concentric.